# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

VANESSA ADELA ROMERO REYES,

 *Plaintiff,*

v.

EXPERIAN INFORMATION
SOLUTIONS INC., et al.,

               Case No. 6:25-cv-01068-PGB-LHP

 *Defendants.*

_____/

## DEFENDANT EXPERIAN INFORMATION
## SOLUTIONS INC.'S MOTION FOR SUMMARY JUDGMENT

Defendant Experian Information Solutions, Inc. ("Experian") respectfully moves this Court pursuant to Federal Rule of Civil Procedure 56 for summary judgment on all claims asserted against it by Plaintiff Vanessa Adela Romero Reyes ("Plaintiff"), and states:

## INTRODUCTION

Plaintiff, proceeding pro se, alleges that Experian violated 15 U.S.C. § 1681 et seq. by allegedly failing to reasonably reinvestigate disputed information, failing to ensure maximum possible accuracy, and improperly disclosing her credit report while it was frozen or locked. Plaintiff also asserts a claim under the Sherman Antitrust Act, 15 U.S.C. § 1.

1

The undisputed record demonstrates that Experian complied with its obligations under the Fair Credit Reporting Act ("FCRA"). Experian's Consumer Dispute Final records and its Automated Consumer Dispute Verification records all confirm that Experian conducted timely reinvestigations of the disputes Plaintiff submitted through its online portal, deleted accounts that could not be verified, updated information where appropriate, and reported items as verified when the data furnishers confirmed their accuracy. Plaintiff's own discovery responses confirm that she: (i) has no evidence that any information reported by Experian was actually inaccurate, (ii) cannot establish cognizable damages, and (iii) has offered no facts supporting her antitrust claim. Some of her claims are also time barred. Summary judgment is warranted on all counts.

## FACTUAL BACKGROUND

Plaintiff Vanessa Adela Romero Reyes filed this action on June 17, 2025, alleging violations of the FCRA and the Sherman Antitrust Act against Experian and other credit reporting agencies ("CRAs"). (Complaint, ECF No. 1 ("Compl."); Statement of Undisputed Material Facts ("SUMF"), ECF No. 102 at ¶ 1). Plaintiff disputes the following accounts on her Experian credit report: (a) Capital One Bank (USA), N.A. ("Capital One") (Account No. ending 4693); (b) Navy Federal Credit Union ("Navy Federal") (Account No. ending 1150); (c) Navy Federal  (Account No. ending 1696); (d) U.S. Department of Education ("Dept. of Education")

2

(Account Nos. beginning 4681); (e) Midland Credit Management ("Midland") (Account No. beginning 3275); and (f) Resurgent/LVNV Funding ("LVNV") (Account No. ending 4256). (SUMF ¶ 3). Plaintiff alleges that Experian failed to conduct reasonable reinvestigations, continued to report inaccurate information, allowed the LVNV account to be deleted and then reinserted without notice, and permitted furnishers to update derogatory information during active disputes and while her credit file was frozen/locked. (Compl. at Count I ¶¶ 3-9.) The Complaint alleges such conduct violated the following sections of the FCRA: 15 U.S.C. §§ 168li(a)(l)(A), 168li(a)(2), 1681i(a)(5)(A)-(B), 1681e(b), 1681b, 1681n, and 1681o. (*Id*. at ¶12). Plaintiff also asserts a claim under the Sherman Antitrust Act, 15 U.S.C. § 1. (*Id*. at Count IV).

## A.    Experian's Reported Account Information

Plaintiff does not dispute the accuracy of the LVNV account. (SUMF, Ex. B at No. 12). Plaintiff only "disputes" the accuracy of the Capital One, Midland, Navy Federal, and the Dept. of Education accounts. (*Id*.). Significantly, Plaintiff has not produced any evidence that any reported information for these accounts was inaccurate, and none of Plaintiff's discovery responses pinpoint any inaccuracy. (*Id*.). For example, Experian's Interrogatory No. 12 requested that Plaintiff list every entry on Plaintiff's credit report that was inaccurate "and for each such entry, state with specificity the reasons why the entry is inaccurate . . . and identify all documents

3

which support or evidence that the entry is inaccurate." (SUMF, Ex. B at No. 12).

Plaintiff identified no documents or inaccuracy, but instead provided only the

following list:

1. Capital One Bank (USA), N.A., Account No. ending 4693 - Reported as a charge-off despite Plaintiffs request for verification. Plaintiff requested documentation verifying the debt but such documentation was not provided.

2. Navy Federal Credit Union, Account No. ending 1150 - Reported despite Plaintiff disputing the account and requesting verification via certified mail. Plaintiff did not receive documentation verifying the debt.

3. Navy Federal Credit Union, Account No. ending 1696 - Same as above; reported despite dispute and request for verification without documentation being provided.

4. U.S. Department of Education, Account No. ending 4681 - Appeared twice on Plaintiffs credit report with the same account number but different balances, creating an inaccurate and inconsistent reporting of the same account.

5. Midland Credit Management, Account No. beginning 327567 - Reported despite Plaintiff disputing the account and requesting validation via certified mail. Documentation verifying the debt was not provided.

(SUMF, Ex. B at No. 12).

With respect to the Dept. of Education accounts, Plaintiff's written dispute

letter to Experian on May 2023 demonstrates that Plaintiff is aware that the two

accounts are not duplicates, but simply share the first five account numbers. (SUMF

¶¶ 7-8; Declaration of Christina Hamilton ¶ 14, Ex. A) ("Hamilton Decl." attached

hereto as **Exhibit "1"**).

**B.      Experian's Dispute Procedures**

Experian conducted multiple reinvestigations in response to Plaintiff's disputes, as documented in the Consumer Dispute Final ("CDF") records and the Automated Consumer Dispute Verifications ("ACDV"). (Hamilton Decl. ¶¶ 19, 23). The CDFs reflect the results communicated to Plaintiff after each reinvestigation. (Hamilton Decl. ¶17) The ACDVs document the specific communications between Experian and each data furnisher during the reinvestigation process, including the furnisher's identity, the dispute reason transmitted, Plaintiff's verbatim dispute narrative, and the furnisher's response and date. (Hamilton Decl. at ¶¶ 16-18). The ACDV dates closely match Plaintiff's unverified, handwritten timeline of her disputes on the Experian app attached to her Complaint. (Compl. Ex. A, ECF No. 1-3; Hamilton Decl., Ex. B). Together, these records confirm that Experian forwarded Plaintiff's disputes to the data furnishers and timely acted upon their verified responses:

- On November 5, 2024, Plaintiff opened a dispute for a LVNV Funding account (No. 444796267436). On November 26, 2024, Experian issued dispute results for that LVNV account. The ACDV record confirms Experian forwarded Plaintiff's dispute to Resurgent Capital Services LP on November 5, 2024, transmitting the dispute reason "Claims inaccurate information" along with Plaintiff's dispute narrative. The furnisher responded on November 8, 2024, verifying the consumer's information and updating the account.

- On December 9, 2024, Plaintiff opened another dispute for the LVNV Funding account (No. 444796267436). On December 16, 2024,

5

Experian issued dispute results showing the LVNV Funding account (No. 444796267436) was DELETED from Plaintiff's credit file.

- On December 18, 2024, Plaintiff opened a dispute for the Midland account. On January 9, 2025, Experian issued dispute results showing the account was "Updated." The ACDV record confirms Experian on December 18, 2024, forwarded Plaintiff's dispute to Midland Credit Management, which responded on January 3, 2025: "Consumer's dispute not specific. Consumer Information verified. Account information updated."

- On January 7, 2025, Plaintiff opened a dispute for the Capital One account. On January 29, 2025, Experian issued dispute results showing the Capital One account was "Verified and Updated." The ACDV record confirms Experian forwarded Plaintiff's dispute on January 7, 2025, to Capital One, which responded on January 16, 2025: "Information accurate as of last submission. Updated to reflect latest account activity."

- On January 12, 2025, Plaintiff opened another dispute for the Midland account. On January 31, 2025, Experian issued dispute results showing the Midland was DELETED from Plaintiff's credit file. The ACDV record for this account confirms the furnisher's response: "Delete account."

- On February 3, 2025, Plaintiff opened three additional disputes on the Experian app, which were submitted on February 4, 2025. On February 21, 2025, Experian issued dispute results: the two Dept. of Education were verified as accurate ("Remains—The company that reported the information has certified to Experian that the information is accurate"); and the new, distinct LVNV Funding account (No. 470793054256) was "Updated." The ACDV records confirm that MAXIMUS Federal Services, Inc. (the servicer for the Dept. of Education accounts) responded: "Account information accurate as of date reported. No changes," on February 14, 2025.

- On April 13, 2025, Plaintiff opened another dispute on the Experian app for the second LVNV account, which was sent to the furnisher on the same day. On May 5, 2025, Experian issued dispute results showing the second LVNV account was verified and certified as accurate. The ACDV record confirms that Resurgent Capital Services LP responded

on April 16, 2025: "Disputed information accurate. Updated account information unrelated to the dispute."

(SUMF ¶¶ 13-23, 30-38; Hamilton Decl., Exs. B, C).

Plaintiff does not dispute these records. In Plaintiff's Responses to Experian's Request for Admissions, Plaintiff admitted that she lacks sufficient information to confirm that Experian's reinvestigations were NOT completed within 30 days. (SUMF, Ex. C at No. 12 ("While Defendant appeared to respond to certain disputes within approximately thirty days, Plaintiff is not able to confirm that all reinvestigations were completed within the required time period.")). Plaintiff also admitted that Experian provided copies of consumer disclosures when requested. (SUMF, Ex. C at No. 11 ("Admitted that Defendant provided Plaintiff with copies of her consumer disclosure when requested.")).

On January 10, 2025, Plaintiff sent a written dispute letter dated January 9, 2025, to Experian via certified mail. (SUMF ¶ 28). The January 9, 2025 letter does not include Plaintiff's date of birth, social security number, Plaintiff's identification, or any other documents. (SUMF ¶ 26). The January 9, 2025 letter disputed a Capital One tradeline, LVNV tradeline, two Navy Federal tradelines, two. Dept. of Education tradelines, and the Midland tradeline. (SUMF ¶ 28).

## C.    Damages Requested by Plaintiff

Plaintiff claims she was denied a mortgage prequalification by First Horizon Bank in September 2024 and an auto loan through Starling Chevrolet in October

2024. (Compl. at Count I, ¶ 13, Count IV ¶ 10). Both credit denial letters indicate that Plaintiff's credit information was obtained from Experian, Equifax, and Trans Union, LLC. (Compl. Ex. J, ECF No. 1-12; Compl. Ex. K, ECF No. 1-13). Plaintiff's Experian credit score was higher than Plaintiff's Equifax and Trans Union scores. (Compl. Ex. J, ECF No. 1-12; Compl. Ex. K, ECF No. 1-13). Plaintiff has produced no evidence of any agreement, conspiracy, or concerted action among Experian and the other credit reporting agencies. (SUMF ¶ 55). Plaintiff's Complaint alleges only that the credit reporting agencies maintain similar credit reporting systems. (Compl. at Count IV).

Plaintiff was denied neither insurance nor employment because of her credit report. (SUMF ¶¶ 47-48). Plaintiff possesses no documents showing humiliation or emotional distress. (SUMF ¶ 49). Plaintiff further admits she has no evidence that Experian disclosed her credit report to third parties during the period her file was frozen on November 5, 2024 or locked on December 18, 2024. (SAMP ¶ 54).

Plaintiff's only claimed out-of-pocket expenses are limited to mailing costs, printing, copying, paper, and ink. (SAMP ¶ 51). Plaintiff has also identified no expert witnesses to support her claims for damages. (SAMP ¶ 7).

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). Where Plaintiff has the burden of proof on an issue at trial, Defendants may simply "[point] out to the district court that there is an absence of evidence to support the [Plaintiff's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Defendant satisfies this burden, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Ray v. Equifax Info. Servs., LLC*, 327 Fed. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings." *Walker v. Darby*, 911 F.2d 1573, 1576 (11th Cir. 1990). Rather, Plaintiff "must make a sufficient showing on each essential element of the case for which [he has] the burden of proof." *Id*. (citing *Celotex Corp.*, 477 U.S. at 322).

This standard applies equally when the non-moving party is appearing *pro se*. While in the summary-judgment context a *pro se* plaintiff's filings are construed "more liberally than those of a represented party," *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002), "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## **ARGUMENT**

9

## I.    PLAINTIFF HAS FAILED TO SHOW ANY INACCURACY

Experian is entitled to summary judgment because Plaintiff cannot demonstrate that any reported information was *inaccurate*, a threshold issue for both claims under 1681e(b) and 1681i. With respect to each disputed account, Plaintiff merely "requested verification" but does not allege, let alone present evidence, that the underlying debts are not hers or that the reported balances are incorrect. (SUMF ¶¶ 41-42, Ex. B at No. 12). In fact, Plaintiff has produced no evidence at all. To the contrary, Plaintiff merely reproduced the same documents attached to her Complaint in response to Experian's Requests for Production. (SUMF, Ex. A).

Notably, Plaintiff's own dispute narratives in the ACDVs confirm she does not dispute the accuracy or existence of these accounts. (Hamilton Decl., Ex. B). For Capital One, Plaintiff questioned only the absence of a 1099-C form—not the validity of the debt itself. (*Id.*). For Midland, Plaintiff demanded removal but offered no basis for inaccuracy (and Experian deleted the account). (*Id.*). For the Dept. of Education accounts, Plaintiff questioned why two accounts appeared with the same number, but the furnisher confirmed both were accurate and the two entries reflect separate loan disbursements with different original amounts. (*Id.*). No reasonable fact finder could find there was an inaccuracy here at the summary judgment stage where Plaintiff has produced no evidence at all and the evidence that has been

10

provided by Experian confirms Plaintiff never identified or disputed any inaccuracy. Summary judgment is thus warranted on Plaintiff's 1681(i) and 1681e(b) claims.

## II. EXPERIAN COMPLIED WITH ITS REINVESTIGATION OBLIGATIONS UNDER 15 U.S.C. § 1681i

Under Section 1681i(a)(1)(A), when a consumer disputes information in her credit file, the consumer reporting agency ("CRA") must conduct a "reasonable reinvestigation to determine whether the disputed information is inaccurate." 15 U.S.C. § 1681i(a)(1)(A). To prevail on a Section 1681i(a) claim, "a consumer must show that (1) the consumer's credit report contains inaccurate or incomplete information; (2) the consumer notified the credit reporting agency of the alleged inaccuracy; (3) the dispute is not frivolous or irrelevant; (4) the agency failed to respond or conduct a reasonable reinvestigation of the disputed items; (5) the failure to reinvestigate caused the consumer to suffer out-of-pocket losses or intangible damages such as humiliation or mental distress." *Bermudez v. Equifax Info. Services, LLC*, No. 607CV-1492-ORL-31GJK, 2008 WL 5235161, at *4 (M.D. Fla. Dec. 15, 2008). *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).

The undisputed record demonstrates that Experian conducted timely reinvestigations of the disputes Plaintiff submitted through its online portal. Experian's CDF records and ACDVs establish that between November 2024 and May 2025, Experian processed at least seven separate reinvestigations on Plaintiff's

behalf, addressing the Capital One, Midland Credit Management, LVNV Funding, and U.S. Department of Education accounts. (Hamilton Decl. at ¶ 19, Ex. B).

Each reinvestigation followed Experian's standard procedures. (Hamilton Decl. at ¶ 21). Experian first reviewed the information provided by the consumer, contacted the company reporting the disputed information, and supplied them all relevant information and any documents provided with the dispute. (Hamilton Decl. at ¶¶ 15-17, 19, 21). Experian then instructed them to review all information provided to them about the dispute, verify the accuracy of the information, and provide a response concerning the accuracy of the disputed item through the ACDVs. (Hamilton Decl. at ¶¶ 15-16, 19, 21). Once the ACDVs were returned from the furnisher, Experian followed the furnisher's instructions regarding each of the accounts and updated them accordingly. (Hamilton Decl. at ¶¶ 18, 20-22). The ACDVs confirm each step of this process, documenting the dispute reason transmitted to the furnisher, the furnisher's identity, and the date of response. (Hamilton Decl. at ¶¶ 16-18).

This is precisely the type of reinvestigation activity the FCRA contemplates. Experian contacted the furnishers, obtained their responses, either deleted items that could not be verified or updated items consistent with the furnisher's response, and then sent the results to Plaintiff. *See, e.g., Rumbough v. Experian Information Solutions, Inc.*, Case No. 6:16-cv-1305-Orl-18GJK, 2018 WL 10455201, at * 5

(M.D. Fla. February 14, 2018) (granting summary judgment in favor of Experian where "it sent an ACDV to the furnisher relaying [Plaintiff]'s dispute, the furnisher responded saying that the [] account was accurate as reported, and Experian then sent the results of the reinvestigation to [Plaintiff]"). Significantly, Plaintiff does not identify any specific flaw in Experian's reinvestigation procedure. *Id*. ("Although [Plaintiff] alleges that the debt associated with the Account is invalid, he fails to identify a specific flaw in Experian's reinvestigation procedure."). Indeed,, Plaintiff admitted that she cannot confirm the reinvestigations were not completed within 30 days. *See* Ex. D at No. 12.

Plaintiff's claim under § 1681i(a)(2) (failure to notify furnishers) likewise fails because the ACDV records conclusively demonstrate that Experian forwarded each of Plaintiff's disputes to the relevant data furnishers. The ACDV records identify the specific furnisher contacted (e.g., Capital One, Midland Credit Management, Resurgent Capital Services LP, MAXIMUS Federal Services), the date the dispute was transmitted, the dispute reason, the consumer dispute narrative forwarded, and each furnisher's response and date. (Hamilton Decl. at ¶¶ 17-19). The furnishers could not have responded with verified account information, updated data, or deletion instructions without receiving notice of the disputes.

Even assuming *arguendo* that Experian's reinvestigation of any of the accounts was deficient, Plaintiff's § 1681i claim still fails because Plaintiff cannot

establish that she suffered any damages causally connected to such a deficiency. As the U.S. Court of Appeals for the First Circuit has explained, "[t]he decisive inquiry" is whether the defendant could have discovered the alleged inaccuracy "if it had reasonably reinvestigated the matter." *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *see also Suluki v. Credit One Bank, NA*, 138 F.4th 709, 723 (2d Cir. 2025) (affirming summary judgment to defendant "[b]ecause no reasonable investigation would have led to a different result).

As discussed above, Plaintiff does not allege, and has produced no evidence, that any account was inaccurately reported. If the information is accurate, a reinvestigation would not have changed the underlying debt status or prevented the charge-offs. Without any evidence of "a *factual* deficiency or error that could have been remedied by uncovering additional facts that provide a more accurate representation about a particular entry," Plaintiff cannot establish the essential elements of causation and damages. *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991).

Summary judgment is therefore appropriate on all of Plaintiff's 1681i claims. *See Nagle v. Experian Info. Solutions, Inc.,* 297 F.3d 1305, 1307 (11th Cir. 2002). ("[F]ailure to produce evidence of damage resulting from a FCRA violation mandates summary judgment.")

### III.   EXPERIAN FOLLOWED REASONABLE PROCEDURES UNDER 15 U.S.C. § 1681e(b)

14

Section 1681e(b) requires consumer reporting agencies ("CRAS") to "follow reasonable procedures to assure maximum possible accuracy of the information" in consumer reports. 15 U.S.C. § 1681e(b). To prevail on a § 1681e(b) claim, a plaintiff must demonstrate that: (1) the reported information was inaccurate; (2) the inaccuracy was due to the agency's failure to follow reasonable procedures; and (3) the plaintiff suffered injury. *Cahlin*, 936 F.2d at 1156.

As discussed above, Plaintiff has provided no evidence of any inaccuracy. Absent showing the inaccuracy of a report, the reasonableness of the reporting agency's procedures is immaterial. *Erickson v. First Advantage Background Services Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020) (citing *Cahlin*, 936 F.2d at 1156). Where a consumer fails establish that the reporting was false as a technical matter or that it was likely to mislead its recipient to such an extent that the recipient would take adverse action against Plaintiff, Plaintiff cannot establish an essential element of his claim that the report violated the "maximum possible accuracy" standard of § 1681e(b). *Id.* at 1253. A consumer who merely disagrees with the characterization of a debt cannot satisfy this objective standard. *See id.* at 1252. In such instances, Plaintiff's claim cannot go on and judgment as a matter of law is appropriate. *Id.* at 1253-54; *see also Garrett v. Experian Info. Sols.*, No. 4:24-CV-143, 2025 WL 1510558, at *2 (N.D. Fla. May 27, 2025) (reasoning plaintiff will fail without "evidence from which a jury could conclude Experian acted unreasonably.

15

. . . [I]f simply showing a mix-up were sufficient to prove unreasonableness, the statute would effectively provide for strict liability."). Accordingly, Experian is entitled to summary judgment on the §1681e(b) claims.

## IV. PLAINTIFF'S REINSERTION CLAIM UNDER 15 U.S.C. § 1681i(a)(5)(B) FAILS

To the extent Plaintiff alleges that Experian violated 15 U.S.C. § 1681i(a)(5)(B) by reinserting previously deleted information without notice, this claim fails because the undisputed record establishes that no reinsertion occurred. Section 1681i(a)(5)(B) provides that if deleted information is reinserted into a consumer's file, the CRA must notify the consumer within five business days and provide the name, address, and telephone number of the furnisher. *See* 15 U.S.C. § 1681i(a)(5)(B)(i)–(ii).

Plaintiff's reinsertion theory is based on the following: on December 16, 2024, Experian deleted the LVNV account bearing Account No. 444796267436 (original amount: $1,448, opened June 2024). (Hamilton Decl. Exs. B, C). Approximately one month later, in mid-January 2025, a different LVNV Funding account bearing Account No. 470793054256 (original amount: $2,150, opened October 2024) appeared on Plaintiff's credit file. (*Id.*).

However, these are two different accounts with different account numbers, different original amounts, and different opening dates. Account No. 444796267436 was a $1,448 collection opened in June 2024; Account No. 470793054256 was a

16

$2,150 collection opened in October 2024. (*Id*.). The appearance of the second LVNV Funding account was therefore not a reinsertion of the deleted account. A CRA does not violate § 1681i(a)(5)(B) when a furnisher reports a new, distinct account to the CRA's database; the reinsertion provision applies only when "information is deleted from a consumer's file pursuant to [a reinvestigation] and is subsequently reinserted." 15 U.S.C. § 1681i(a)(5)(B). Because the second LVNV Funding account was never previously deleted, the reinsertion provision does not apply. Plaintiff's subjective belief that the two accounts are the same does not create a genuine dispute of material fact where the account numbers, balances, and open dates are objectively different. *See, e.g., Jordan v. Trans Union LLC*, No. 1:05 CV 305 GET, 2006 WL 1663324, at *7 (N.D. Ga. June 12, 2006); *see also Williams v. First Advantage LNS Screening Sols., Inc.*, 155 F. Supp. 3d 1233, 1241 (N.D. Fla. 2015).

Experian is therefore entitled to summary judgment on the §1681i(a)(5)(B) claim.

V.    **PLAINTIFF'S SECTION 1681b CLAIM FAILS AS A MATTER OF LAW**

Plaintiff contends that Experian improperly used or disclosed her credit report while her file was frozen or locked, in violation of 15 U.S.C. § 1681b. Plaintiff's Complaint states that she froze her Experian credit file on November 5, 2024, and locked it on December 18, 2024. (SUMF ¶¶ 52-53). A security freeze under 15

17

U.S.C. § 1681c-1(i) is defined by statute as a restriction that prohibits a CRA from disclosing the contents of a *consumer report* that is subject to the freeze to any person requesting the consumer report. 15 U.S.C. § 1681c-1(i). "A security freeze is designed to prevent credit, loans, and other services from being approved in the consumer's name without the consumer's consent." *Brown v. Equifax Info. Services, LLC*, No. 1:09-CV-0168-CAM-LTW, 2010 WL 11647403, at *4 (N.D. Ga. Feb. 16, 2010). The statute enumerates numerous exceptions to the freeze restriction. However, review of those exceptions is unnecessary here because Plaintiff fundamentally misconstrues improper disclosure and internal file maintenance activities.

Plaintiff's claim fails as a matter of law because she has produced no evidence that Experian disclosed her report to any third party without a permissible purpose during the period her file was frozen or locked. (SUMF ¶ 54). Plaintiff's own discovery responses confirm this evidentiary void: Plaintiff admitted that she "lacks sufficient information to admit or deny this request because Plaintiff does not have knowledge of all disclosures of her credit report made by Defendant to third parties." (SUMF, Ex C. at No. 10). The CDF records show that Experian's interactions with Plaintiff's credit file during the relevant period consisted of processing dispute reinvestigations. (Hamilton Decl., Ex. C). The fact that Experian updated information on her when processing Plaintiff's reinvestigation results is

18

categorically different than disclosing a consumer report that is locked or frozen to a third party.

Section 1681i requires CRAs to conduct a reasonable reinvestigation of disputed information in a consumer's *file*. 15 U.S.C. § 1681i. When a CRA updates, modifies, or deletes information in a consumer's file as part of processing reinvestigation results under § 1681i, it is performing internal file maintenance. This activity is not a *communication* of information to a third party, does not constitute a *consumer report* as defined by § 1681a(d)(1), and therefore does not fall within the scope of what the freeze or block restricts. Absent evidence of an unauthorized disclosure, Plaintiff's § 1681b claim fails as a matter of law.

## VI.    NO EVIDENCE OF WILLFUL NONCOMPLIANCE UNDER 15 U.S.C. § 1681n

To recover under § 1681n, Plaintiff must show that Experian "willfully" failed to comply with its FCRA obligations, meaning Experian acted knowingly or with reckless disregard of its statutory duty. *Safeco Ins. Co. of Am. v. Bur*, 551 U.S. 47, 57 (2007). "A consumer reporting agency does not recklessly violate the Act when it acts in accord with an objectively reasonable interpretation of the Act." *Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1319 (11th Cir. 2009).

Plaintiff described Experian's alleged willfulness as "repeated verification of disputed and inaccurate information, despite multiple notices from Plaintiff." (SUMF, Ex. B at No. 10). There is no evidence of willfulness here. The ACDV

19

records confirm that Experian processed the disputes Plaintiff submitted through its online portal by forwarding them to the appropriate furnisher with the specific dispute reason code and Plaintiff's dispute basis. (Hamilton Decl. ¶¶ 12, 15-17, 19, 21, Ex B). Experian then acted on the furnisher's response: deleting items when the furnisher directed deletion, updating items when the furnisher provided new information, and reporting items as verified when the furnisher confirmed accuracy. (Hamilton Decl. ¶¶ 18-21, 23, Ex C). Plaintiff's own evidence—the CDFs she received from Experian—demonstrates that Experian followed its standard reinvestigation procedures. (Hamilton Decl. ¶¶ 21-23, Ex C).

## VII.   PLAINTIFF HAS NOCOGNIZABLE DAMAGES

Even assuming that Experian somehow violated the FCRA, Plaintiff cannot establish actual damages. To recover actual damages under § 1681o, a plaintiff must prove damages proximately caused by the violation. *See Cahlin*, 936 F.2d at 1160-61.

Here, Plaintiff has produced no evidence of damages claim fails for lack of proof. The undisputed facts established by Plaintiff's own discovery responses show Plaintiff's out-of-pocket expenses are limited to de minimis mailing, printing, and copying costs, Plaintiff's emotional distress is not evidenced by any documentation, and Plaintiff has identified no expert witnesses to testify regarding damages. (SUMF

20

¶¶ 49-51). Plaintiff instead intends to rely only on her own testimony without corroborating evidence. (SUMF ¶ 49).

Plaintiff's emotional distress claim, supported solely by her own anticipated testimony and no corroborating evidence, is insufficient to survive summary judgment. See *Rambarran v. Bank of America, N.A.,* 609 F. Supp. 2d 1253, 1267-68 (S.D. Fla. 2009) (granting summary judgment where the plaintiff's recitation of economic hardships over an eight-year period was "too vague, too conclusory and too imprecise" and not tied to a discrete breach of the FCRA); *Wilson v. SunTrust Bank, Inc*., 533 F. Supp. 3d 1363, 1370 (S.D. Ga. 2021).

Moreover, because Plaintiff cannot show the reported information was inaccurate, any credit denials she experienced would have occurred regardless of Experian's conduct. Although Plaintiff claims she was denied credit on two occasions, she has not linked those denials to inaccurately reported information as opposed to accurately reported negative information. *See Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1304 (11th Cir. 2019) ("[T]here must be a causal connection between the violation and the emotional harm."); *Jackson v. Equifax Info. Servs.. LLC.*, 167 Fed. App'x 144, 146 (11th Cir. 2006) (summary judgment where plaintiff "failed to produce any evidence indicating that he was damaged as a result of an allegedly inaccurate Equifax report").

## VIII.  PLAINTIFF'S SHERMAN ANTITRUST ACT CLAIM SHOULD BE DISMISSED

Plaintiff's Sherman Antitrust Act claim under 15 U.S.C. § 1 requires proof of a contract, combination, or conspiracy among two or more separate entities that unreasonably restrains trade in the relevant market. *Procaps S.A. v. Patheon Inc.*, 845 F.3d 1072, 1080-81 (11th Cir. 2016).

Plaintiff has alleged no facts—and produced no evidence—showing any agreement, conspiracy, or concerted action among Experian and other CRAs. (SUMF ¶ 55). Plaintiff alleges only that the CRAs maintain similar credit reporting systems, but "[p]arallel business behavior . . . 'is just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market' as it is with conspiracy." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007) (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993)). This is insufficient and, accordingly, Plaintiff's Anti-Trust claim fails as a matter of law, entitling Experian to summary judgment.

## IX.    CERTAIN CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Under 15 U.S.C. § 1681p, FCRA claims must be brought within the earlier of: (1) two years after the date of discovery of the violation; or (2) five years after the date on which the violation occurred. Plaintiff filed this action on June 17, 2025. Plaintiff first disputed the accuracy of the two U.S. Dept. of Education accounts in May 17, 2023. (SUMF ¶¶ 7-9, 12, Ex. D; Hamilton Decl. ¶ 14, Ex. A). Accordingly,

any claims based on any alleged inaccuracy of the two U.S. Dept. of Education accounts are time-barred as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant Experian Information Solutions, Inc. respectfully requests that this Court grant summary judgment in its favor on all claims asserted against it by Plaintiff and enter final judgment dismissing Plaintiff's claims with prejudice, and any such further relief as this Court deems just and proper.

Dated: July 6, 2026

VENABLE LLP

/s/ Patrick T. Kalbac
Patrick T. Kalbac, Esq.
Florida Bar No. 1011649
801 Brickell Ave, Suite 1500
Miami, FL 33131
Telephone: (305) 372-2474
Email: ptkalbac@venable.com
*Counsel for Defendant Experian Information Solutions, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of July, 2026, a true and correct copy of the foregoing was served via U.S. Mail, postage prepaid, upon the following:

Vanessa A. Romero Reyes
4859 Cherokee Rose Drive
Orlando, FL 32808
*Pro Se Plaintiff*

/s/ Patrick Kalbac
Patrick T Kalbac

23